HATTIE HERRICK *v.* TOWN OF HOLLAND.

May Term, 1910.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed July 30, 1910.

*Towns—Highways—Culverts—Sluice—Injury to Traveller—Action—Pleadings—Notice of Claim—Trial—Objections—Sufficiency—Examination of Expert Witnesses—Evidence—Admissibility—Conjecture of Witness—Harmless Error—Misconduct of Counsel—Improper Argument—Action of Court.*

In an action against a town for injury to a traveller because of a defective culvert, it is not essential that the declaration allege the giving of the written notice of the claim as required by the statute in order to render admissible the giving of that notice.

Unless it is manifest from the question or offer that evidence objected to cannot be admissible in any state of the case, the objection must indicate the precise point on which the court is asked to rule, and so the objection to a question asked a medical expert witness that it was incompetent, incomplete, without proper foundation, and did

not properly, sufficiently, or fully state the testimony, was too
general.

Where the evidence tended to show that plaintiff's appetite was very
poor, a question asked a medical expert witness properly assumed
that plaintiff had an "uncertain appetite."

In an action against a town for injuries from holes in the covering of a
culvert on a highway, where it appeared that in the evening of the
day of the accident the holes were filled with cobble stones and
gravel, so that the surface of the road was smooth, and plaintiff's
witness testified that at the time of the accident, and continuously
for four days thereafter, the ground was frozen, that on the fourth
day he excavated the holes, so that they were, in his judgment,
in the same condition as at the time of the accident, though he
paid no particular attention to their size at that time, he was
properly allowed further to testify to the size of the holes as
measured by him when he excavated them; the fact that he paid no
particular attention to the size of the holes at the time of the
accident went only to the weight of his testimony.

Nor was it necessary to show that the holes when measured by the
witness were in exactly the same condition as at the time of the
accident, but only that they were in substantially the same con-
dition.

In an action against a town for injuries from holes in the covering of a
culvert on a highway, the written notice of the claim, describing
the culvert as insufficient and out of repair in that it was not
properly covered, and that there were two holes in the covering
about the middle of the highway and down into the culvert, does
not confine the evidence of the alleged insufficiency to the covering
of the culvert, but is broad enough to let in evidence as to the
culvert itself and its approaches.

Where evidence was received on the strength of certain offers and its
admissibility did not depend on whether the offers were made good,
but only on its own relevancy, error does not appear merely
because the offers were not made good.

In an action against a town for injuries from holes in the covering of a
culvert on a highway, testimony of a witness that, while driving
over the culvert two days before the accident, his horse stumbled
thereon, was admissible, as tending to show that the holes in
question were then there.

The fact that a witness testified that when driving over the road two days before the accident his horse stumbled "at or about that sluice," that he had no reason to know that it was directly over the sluice, nor within ten or twenty feet of it on either side, did not reduce to mere conjecture, and so render inadmissible, his further testimony that his "judgment" was that it was over the sluice, and that the next day after the accident his "idea" was that it was there, which was still his idea; as the words "judgment" and "idea," as used, fairly signify only an infirm quality in the observation of the witness and possibly in his recollection.

The admission of testimony, subject to exception for immateriality, that there was a stone culvert at the place of the accident before the tile culvert in question was constructed, if error, was harmless, where defendant showed the same thing by several witnesses and all agreed that such was the fact.

Where plaintiff's counsel in his argument to the jury, stated as facts divers things pertinent to the issue and not in evidence, and thereupon, after defendant's objection and exception, the court merely directed the jury to disregard what plaintiff's counsel had said, if anything, that was outside the evidence, the error was not cured and will be presumed prejudicial.

Plaintiff's counsel in argument to the jury said that defendant's counsel had been trying to obstruct the wheels of justice, and, after defendant's objection, said: "I did not. I said they had set here and obstructed the wheels of justice legally," to which defendant excepted. Thereupon plaintiff's counsel stated that he did not contend that the objections made by defendant's counsel were improper or not perfectly legal, but that when the jury retired they should discuss the argument in view of defendant's attitude in the case, which it had a legal right to take, to which defendant excepted. The court did not check plaintiff's counsel. *Held* error, as a party is not to be prejudiced before the jury by his opponent's adverse criticism of his counsel for proper action in the conduct of the trial.

A tile drain traversing a public highway beneath its surface, and consisting of an opening or channel through which water flows is a "culvert" within the meaning of P. S. 4029, making a town liable for damage resulting from the insufficiency of a bridge or culvert that the town is bound to keep in repair; for such a structure is certainly a "sluice," and "culvert" includes "sluice."

CASE for negligence.    Plea, the general issue.    Trial by jury at the September Term, 1909, Orleans County, *Taylor*, J., presiding.    Verdict and judgment for the plaintiff.    The defendant excepted.

It appeared that on December 6, 1908, as plaintiff and her husband, in a wagon drawn by a horse driven by him, were riding over a public highway in defendant town, the horse stumbled and fell, thereby throwing plaintiff to the ground and injuring her. Shortly after the accident, and at the point where it occurred, two holes, six inches wide, six inches deep, and about two inches apart, were found in the middle of the travelled part of the highway, and there was no evidence tending to show that any other defect in the highway was then apparent.

Plaintiff's evidence tended to show that these holes "looked to be in the covering of the culvert," which at that point extended across the highway and beneath its surface; and that previous to the year 1900 this culvert was a stone structure, but that since then, and at the time of the accident, it was a "stone culvert lined with tile." Defendant's evidence tended to show that previous to the year 1900 the culvert was a stone structure; that in the summer of 1900 all the stone forming the old culvert was removed, and twelve inch tile laid across the road in the bed of the old culvert; that a retaining wall, consisting of one course of undressed stone, was constructed around one end of the tile; that the other end of the tile lacked one length, two feet, of extending entirely across the roadbed, and the missing section was supplied by a stone structure with a retaining wall, as at the opposite end; that the whole was then covered to the depth of twelve inches with earth thoroughly tamped; and it appeared that the structure was covered in such a manner that at the time of the accident the surface of the roadway above the tile was level with the surface of the roadway for quite a distance in either direction. The roadway over this tile and stone structure was sixteen feet and eight inches wide. The exceptions state that:

"No other defect in said road was claimed to have been discovered until May, 1909, and no defect was discoverable in the spring or summer of 1909 in the surface of said roadbed; but the evidence of plaintiff tended to show that, by digging through the crust of said roadbed in the summer of 1909, cavities were

found under the apparently sound surface of said roadbed, and that by pulling the grass from between the stones of the said retaining wall on the outer side of said roadbed, crevices were found between said stones through which a stick could be inserted from five or six feet, but that said crevices were filled with grass and dirt before plaintiff's agents removed them; that the crust of said roadbed was never broken through into said cavities, if any existed, by the travel upon said road, unless the two. holes there after the accident on December 6 were so made."

After reciting the injuries suffered by plaintiff in consequence of having been thrown from the wagon, the declaration concludes with: "And the plaintiff further alleges that by reason thereof she has been to great expense for nursing, medicines and doctor's care and suffered other grave and serious damages to the amount of two hundred dollars. All to the damage of the plaintiff five thousand dollars."

The court instructed the jury that plaintiff's notice to defendant was sufficient to enable her to maintain this action, to which instruction defendant specially excepted.

*Young & Young* for the defendant.

The tile drain in question is not a bridge or culvert within the meaning of the statute. "A bridge denotes a structure of wood, iron, brick, or stone, ordinarily erected over a river, creek, pond, or lake, or over a ravine, railroad, canal or other construction in the highway, so as to make continuous a roadway, and afford to travelers a convenient passageway from one bank to the other. A culvert for draining surface water is not a bridge." *Carroll County Commissioners* v. *Bailey,* 122 Ind. 46, 23 N. E. 672; *Enfield Toll Bridge Co.* v. *Hartford etc. Co.,* 17 Conn. 40, 42 Am. Dec. 716; *Madison County Com'rs.* v. *Brown,* 89 Ind. 48; *Town of Tolland* v. *Town of Willington,* 26 Conn. 578; *Clark County Com'rs.* v. *Brod,* 3 Ind. App. 585, 29 N. E. 430; *Cleveland* v. *Washington,* 79 Vt. 498; *Kowalka* v. *St. Joseph,* 73 Mich. 322.

This notice clearly limits the defect for which complaint is made to a hole in the covering of the culvert thereby limiting the place and the defect to the covering of the culvert. The plaintiff

can recover for no defect in the highway other than the defect at the place described in the notice. *Reed* v. *Calais,* 48 Vt. 7; *Purrington* v. *Warren,* 49 Vt. 19; *Ranney* v. *Sheffield,* 49 Vt. 191; *Babcock et ux.* v. *Gilfillan,* 47 Vt. 519; *Farnsworth* v. *Mount Holly,* 63 Vt. 293; *Bartlett* v. *Cabot,* 54 Vt. 242; *White* v. *Stowe,* 54 Vt. 510; *Ranney* v. *Sheffield,* 49 Vt. 191; *Cook* v. *Barton,* 63 Vt. 566.

The defendant is only liable for a defect which is due to some fault or neglect on the part of the town. If this defect was a defect in a bridge or culvert and the defect occurred immediately before the accident or at the time of the accident the defendant is not liable. *Ozier* v. *Hinesburg,* 44 Vt. 220; *Campbell* v. *Fairhaven,* 54 Vt. 336; *Brown* v. *Mount Holly,* 69 Vt. 364; *Prindle* v. *Fletcher,* 39 Vt. 255. If there was any defect in this tile drain it was a latent defect, one which was not open and obvious. It was a defect which could not be discovered except by digging up the road at a place where it had every appearance of being in perfect repair and safe. For such latent defects in its highways a town is not liable. *Ozier* v. *Hinesburg,* 44 Vt. 220; *Campbell* v. *Fair Haven,* 54 Vt. 363; *Brown* v. *Mount Holly,* 69 Vt. 364.

The notice confines the defects complained of to the covering of the culvert, and the jury found that the holes in question were in the approach; and it is well settled that no recovery can be had for a defect other than that specified in the notice. *Underhill* v. *Washington,* 46 Vt. 767; *Boyd* v. *Readsboro,* 55 Vt. 163; *Lawton* v. *Weathersfield,* 74 Vt. 41; *Holcomb* v. *Danby,* 51 Vt. 428; *Wheelock* v. *Hardwick,* 48 Vt. 19.

*Cook & Williams* and *W. A. Dane* for the plaintiff.

When it fairly appears from the evidence, as it does in the present case, that the defect causing the injury and the defect described in the notice, although not identical, were both within the limits of the structural entity, upon each component part of which the liability of the town rests equally; and that the town was not misled as to the precise defect causing the injury, the discrepancy is harmless and immaterial. *Knox* v. *Wheelock,* 56 Vt. 189; *Donahue* v. *Warren,* 95 Wis. 367, 70 N. W. 305; *Melendy* v. *Bradford,* 56 Vt. 148; *Harris* v. *Townshend,* 56 Vt.

716; *Ranney* v. *Sheffield*, 49 Vt. 191; *Bliss* v. *Whittingham*, 54 Vt. 172. It is sufficient if the injured party gives to the town as good a description of the precise place where the accident occurred and of the defect causing the accident as he reasonably can in all the circumstances, it appearing that the town was not misled thereby. *Law* v. *Fairfield*, 46 Vt. 425; *Babcock* v. *Gifford*, 47 Vt. 519; *Butts* v. *Stowe*, 53 Vt. 600. The sufficiency of the notice is to be tested with reference to the purpose for which it is required. If sufficient for that purpose it is a good notice. The place and cause of the injury are sufficiently stated in the notice when they are truly described with such a reasonable degree of certainty that ordinary men, in the exercise of ordinary intelligence, in all the circumstances, are able to ascertain from the notice, by the use of ordinary diligence, the place where the accident occurred and the cause that occasioned it. *Budd* v. *Railroad Co.*, 37 Atl. 683; *Gardner* v. *City of New London*, 28 Atl. 42; *Dean* v. *Town of Sharon*, 45 Atl. 963; *Town of Waterford* v. *Elson*, 149 Fed. 91; *Graves* v. *Waitsfield*, 81 Vt. 84.

ROWELL, C. J. This is case for injury on a highway. It is objected that as the declaration does not allege that a notice in writing, made essential to recovery, was given as required by statute, no evidence concerning the giving of such a notice was admissible. But this was held the other way in *Kent* v. *Lincoln*, 32 Vt. 591. It makes no difference that now the statute requires the notice to be in writing but did not then.

The objection to the question put to the plaintiff's medical expert, that it was incompetent, incomplete, without proper foundation, and did not properly, sufficiently, nor fully state the testimony,—was too general to be available, the rule being that objections must be such as to indicate the precise point on which the court is asked to rule. But this rule has its exceptions, and one is, when the evidence offered can not be material nor relevant in any state of the case, and that is apparent on the face of the question or the offer, a general objection for immateriality or irrelevancy is sufficiently specific. *Doyle* v. *Melendy*, 83 Vt. 339, 345, 75 Atl. 881.

The further objection to the question that there was no evidence of "uncertain appetite," which the question assumed, was not well taken, for the testimony tended to show that the

plaintiff's appetite was very poor since the accident, and it is a matter of such common knowledge that a very poor appetite is an uncertain appetite that it may well be characterized as such. And though the bill of exceptions says that no evidence was introduced to show that she had an uncertain appetite, yet we take that to mean no direct evidence, and not that a poor appetite was not such evidence.

It appeared that in the evening of the day of the accident, one of the selectmen measured and filled the holes in the road with small cobble stones and gravel so that the surface of the road at the place of accident was entirely smooth. Plaintiff's husband testified that four days after the accident he dug out the holes, and that they were, in his judgment, in the same condition as at the time of the accident. He further testified that the ground was frozen at the time of the accident and at the time he dug out the holes, and was frozen between those times. After this the witness was allowed to testify to the size of the holes as measured by him when he dug them out; to which the defendant excepted because there was no evidence that the holes were in the same condition then as at the time of the accident nor just before; that the evidence showed that they had been tampered with—something done to them, and that the fact that they looked about the same was not evidence; that before those measurements could be shown it must be proved that the holes were the size then that they were at the time of the accident, if the size was material. There was no evidence offered tending to show that the holes were in the same condition when the witness measured them as they were in just before the accident, nor any to show that they were in the same condition they were immediately after the accident and before they were filled by the selectman.

In support of this exception the defendant submits that evidence of the size of the holes four days after the accident, when it appeared that they had been filled up and that the travel had passed over them, etc., showed such a change in their condition as to make the evidence incompetent and immaterial; that if the size of the holes was material, it was necessary to show that they were in exactly the same condition when measured as when the accident happened; that the fact that the witnesses, who paid no particular attention to that at the time of the accident,

noticed no difference, was not enough; that in the circumstances disclosed it would be impossible to dig out the holes and leave them in exactly the same condition they were in when filled up; that the laws of nature make this so evident that the mere statement that the holes looked about the same was insufficient to make the measurements admissible.

But we think the testimony tended to show that the size of the holes when measured by the witness was substantially the same as when measured by the selectman, and that it did not show such a change in their condition as to make the testimony inadmissible. Nor do we think that in order to make the measurements admissible it was necessary to show that the holes were in exactly the same condition as at the time of the accident. It was enough if they were in substantially the same condition. And that the witnesses paid no particular attention to their condition, if true, went only to the weight of their testimony and not to its admissibility.

The defendant groups several exceptions to the admission of evidence under the head of "evidence as to the culvert itself, the road in the vicinity of the culvert at times long after the accident, and failure to make good plaintiff's offers."

As to evidence relating to the culvert itself, the defendant claims that the language of the notice of injury is such that it expressly confines the founderous condition of the road complained of to the covering of the culvert, to the exclusion of its corporeal substance and its approaches, and that therefore evidence relating thereto was inadmissible. But the court held otherwise, and rightly, we think. The notice describes the culvert as insufficient and out of repair in that it was not properly covered, and in that there were two holes in the covering about the middle of the highway and down into the culvert. This language is broad enough to let in the evidence objected to. Plaintiff's testimony tended to show that the holes "looked to be in the covering of the culvert," but that the tile curved in the middle of the road about eight inches from a straight line, which brought the holes at one side of the tile. The defendant's testimony tended to show that it curved only three inches, but that the holes were twelve inches from it. The jury found that the holes were not in the covering of the culvert, but in the approach.

As to the road in the vicinity of the accident at times long after the accident. The defendant objected to evidence of that because it did not appear that the conditions then were the* same as the conditions at the time of the accident. But this objection was not well taken, for the bill of exceptions says that the plaintiff's evidence tended to show that the condition of the culvert and of the roadbed in the vicinity of the culvert was the same at the times referred to as at the time of the accident, except that the holes had been filled and dug out and filled again, and except such disturbances of the roadbed on other occasions as the testimony showed. But the testimony does not show that those disturbances materially changed the conditions there from what they were at the time of the accident. At any rate, it was a fair question for the jury to say on the evidence whether they had or not.

As to plaintiff's failure to make good her offers. Here the defendant says that the plaintiff not only did not make good her offers, but by means of those offers induced the court to receive other evidence not admissible unless the offers were made good. But though the court did receive some evidence on the strength of offers, yet its admissibility did not depend upon the offers being made good, but only upon its own relevancy. So there is no error here, though the offers were not made good, as the defendant claims. But whether they were made good or not will be material when we come to consider the charge, for the court charged that they were, to which the defendant excepted.

As tending to show that the holes were in the road before and at the time of the accident, plaintiff's witness Daggett testified that when driving over the road two days before the accident, his horse stumbled "at or about that sluice"; that he had no reason for knowing that it was directly over the sluice, nor within ten or twenty feet of it on either side; that he had no reason for knowing, and could not say; that his judgment was, it was there; that the next day after the accident his idea was it was over the sluice, and that that was still his idea, but that he saw no hole in the road; that his horse came very near going down when she stumbled, and went twenty or thirty feet before she got fairly righted up, and that she had stumbled before.

The defendant argues that the fact that the horse stumbled was no evidence of a hole in the road, as horses frequently stumble

where there are no holes; that the witness was not certain that the horse stumbled at the sluice, and said he had no means of knowing; and that, in view of all this, it was error to allow him to express his judgment subsequently formed, as tending to show a hole in the road, as the testimony for that purpose was incompetent, irrelevant, and immaterial.

The argument that the stumbling of the horse was no evidence of a hole in the road because horses sometimes stumble where there is no hole, is not tenable, for though the fact of stumbling might have been open to some other explanation, yet the testimony tended to show a condition proper for the employment of inference in respect of the holes being the cause of the stumbling, and so the stumbling was evidence of the holes.

The ground of the rest of the argument seems to be that the testimony of the witness indicates such a total lack of observation at the time, that his "judgment" and "idea" were mere conjecture, not based on a sufficient and legal foundation. If that is so, the argument is sound. But we think it is not so; but that those terms fairly signify only an infirm quality in the observation of the witness, and possibly in his recollection as well, in which sense the testimony was admissible. 1 Wig. Ev. §727.

The plaintiff showed, subject to exception for immateriality, that there was a stone culvert there before the tile was put in in 1900. But the defendant showed the same thing by several witnesses, and all agreed that such was the fact. So if here was error, which we do not decide, it was manifestly harmless.

In his closing argument to the jury, plaintiff's counsel said if he had wanted to show the plaintiff in all her weakness day after day, he would have had her in court sitting in her chair where they could see her collapse as she had collapsed. To this the defendant excepted for want of evidence tending to show that she had collapsed during the trial. Thereupon the court told plaintiff's counsel that he should not go further than the evidence warranted, to which he replied that he did not want to, if he had used the word *collapse*, it had appeared in the case that the plaintiff had fainted and been in a fainting condition, and had collapsed; and that Dr. Whittaker's testimony was that he did not think she was able to go onto the stand. Thereupon the defendant's counsel said that Dr. Whittaker did not testify, and that it did not appear, that she had fainted during the trial. Plaintiff's counsel then said he withdrew the word *collapse*.

The bill of exceptions says that there was no evidence that the plaintiff collapsed at any time or place during the trial, nor that she had fainted, or was in a fainting condition; and that Dr. Whittaker did not testify that he did not think she was able to go onto the stand.

When testifying the plaintiff asked for and was permitted to take a rest for a few minutes. While testifying, and at other times in the presence of the jury, she manifested signs of being in a weak and nervous condition, as the presiding judge thought.

The court told the jury in the time of it, to disregard anything that plaintiff's counsel had said, if he had said anything, in regard to anything that did not appear in evidence, and to confine themselves to what appeared in court.

Thus it appears that the plaintiff's counsel, against objection and under exception, stated as facts divers things pertinent to the issue and not in evidence, and assumed them to be in evidence when they were not. This, according to all the cases, is sufficient to reverse a judgment if not cured on trial.

The usual remedy for such mischief is, for the offending counsel fully and frankly to retract what he has said amiss, or for the court to rule it out at once, and instruct the jury not to consider it. But this remedy may not always cure, and when it does not, the verdict should be set aside and a new trial granted, lest otherwise injustice should be done. *Fraser* v. *Blanchard,* 83 Vt. 136, 144, 73 Atl. 995.

But here was no such retraction, but only a partial retraction, and a half-hearted one at that. This did not remove the sting nor neutralize the poison. Nor did the court rule out the objectionable matter, nor even tell the jury that there was any, but left it for them to say. This was error; and as the objectionable matter was prejudicial in nature, it will be taken to have prejudiced, the contrary not appearing, for presumptions go against the wrongdoer.

Plaintiff's counsel also said to the jury in his closing argument that the defendant's counsel had been trying to obstruct the wheels of justice, to which the defendant objected. Plaintiff's counsel then said, "I did not. I said they had set here and obstructed the wheels of justice legally." To all this the defendant was allowed an exception. Thereupon plaintiff's counsel said, "Not that the objections they have made are im-

proper or that they are not perfectly legal, that is not what I am urging; but I am saying to you, when you get to your room, when you get around to look this matter over, when you get ready to discuss the argument, I want you to discuss it, look it over carefully, with the idea in view of their attitude in the case which they had a legal right to take.'' To this the defendant was allowed an exception.

The court did not check plaintiff's counsel in all this, but let him go on, notwithstanding the defendant's objection and exception, and that amounted to ruling that what he was saying was within the bounds of legitimate argument. *Magoon* v. *Boston & Maine R. R. Co.,* 67 Vt. 177, 31 Atl. 156. This was error, for a party is not to be prejudiced before the jury by his opponent's adverse criticism of his counsel for their proper and "perfectly legal" action in the conduct of his case on trial. This, in principle, is like *Taft* v. *Fisk,* 140 Mass. 250, 5 N. E. 621, 54 Am. Rep. 459. There the defendant sought to show a certain thing on trial. It being objected that the answer was not broad enough to let it in, the defendant was allowed to amend by setting it up. Plaintiff's counsel in his closing argument to the jury said that the filing of the amendment showed that it was a "put-up" defence, not relied upon when the original answer was filed; that its filing during the trial should be taken into account; that not a word was said about it in the original answer; that the fact that this defence was not set up until the trial was partly through was to be considered, etc. Held error for the court not to instruct the jury on request that the making of the amendment was not a subject of comment, and should not affect their judgment upon the facts of the case. The court said that it would be a serious embarrassment to that liberal amendment of pleadings contemplated by the statute, if a party availing himself of the leave to amend granted by the court, could do so only by subjecting himself to the imputation that his new form of statement, by its difference from that previously made, showed that he presented a simulated case.

It is objected to the charge that the tile drain in question is not a culvert within the meaning of that word as used in the statute. But the drain is certainly a sluice, according to Webster, for it is an opening or a channel through which water flows, and

culvert includes sluice, as held in *Cleveland* v. *Washington,* 79 Vt. 498, 65 Atl. 584.

The court charged that the plaintiff's evidence tended to show that the tile was laid between the walls of the old stone culvert, with a filling over it to the level of the road, and that the plaintiff claimed that such being the structure, the holes were in the covering of the culvert. The defendant excepted to this for want of evidence tending to show that the tile was thus laid, claiming that the evidence did not disclose that any of the road was built up nor cut down to make an approach to the culvert, but showed that the road was simply cut out wide enough to let in the tile, so that nothing beyond the tile was properly a part of the culvert. The court charged that it was important for the jury to decide just what the structure was in this respect in order to determine whether the holes were in the covering or in the approach.

Although the plaintiff's evidence was rather slight to show that the tile was laid between the walls of the old culvert, yet it can not be said that there was none, for the plaintiff's husband testified that the culvert was filled in with stone at the sides of the tile—the walls of the tiling; that he could drive a common stick right down into the stone where the dirt was two and a half or three feet deep, clear up to the bed of the road, the wheeltrack, through the stone that was thrown up around the tile sometime on each side of it. But even if this were otherwise, the plaintiff's case is by no means without evidence tending to show that the culvert had approaches of a different construction sufficiently extensive to take in the holes though located where the defendant claimed. This, however, would not cure error in the charge respecting the matter complained of had there been any.

Without deciding whether the defect in question was such that it was necessary for the plaintiff to show that the town knew of it or was in fault in not knowing of it, it is enough to say that the court submitted that question to the jury, and not without evidence, as the defendant claims and of which it complains.

The claim that the plaintiff has limited her recovery to $200 by her declaration is not sustained, because, if for no other reason, the allegation relied upon for that contention is construed to relate only to expense incurred in and about endeavoring to be

cured of her injuries occasioned by the accident, and not to all her damage occasioned thereby, which is alleged to be $5,000.

There are other exceptions to the charge, many of which are virtually disposed of by what has been said about the exceptions to the admission of evidence; and as the rest of them present questions either not likely to arise again, or if again, not in a way to present the same questions they now present, it is not deemed necessary to consider them.

*Reversed and remanded.*